Filed 3/18/13  Thakar v. Conti CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHETAN THAKAR,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>ROBERT CONTI,<br><br>        Defendant and Respondent. | B238498<br><br>(Los Angeles County<br>Super. Ct. No. YC064739) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Reversed and remanded.

        Chetan Thakar, in pro. per., for Plaintiff and Appellant.

        Waxler♦Carner♦Brodsky, Barry Z. Brodsky, and Jodi L. Girten for Defendant and Respondent.

## INTRODUCTION

In this appeal we consider the judgment entered in favor of defendant Robert Conti after the trial court sustained without leave to amend Conti's demurrer to plaintiff Chetan Thakar's complaint. We conclude that the trial court erred by sustaining Conti's special demurrer based on Thakar's failure to obtain leave of court before bringing claims against Conti, an attorney, based on allegations of his participation in a civil conspiracy. (Civ. Code, § 1714.10.) We consider, however, whether the complaint was subject to the sustaining of a general demurrer for failure to state a cause of action, and conclude that numerous causes of action, though not all, were fatally defective. We reverse the judgment of dismissal in favor of Conti and remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and appellant Chetan Thakar filed an unverified complaint in the underlying action on May 6, 2011. Therein, he alleged that in 1998, defendants Drs. Martin Gizzi and Subramanian Hariharan (sometimes referred to as Harry) wrongfully terminated him from a hospital residency program ("JFK") in New Jersey.[1] Those individuals purportedly began conducting surveillance of him and interfering with his attempts to obtain a medical license and employment. Thakar tried to engage attorneys in order to sue the doctors, but was thwarted by their interference with his efforts to do so. At some point, Thakar moved to California and in 2006 began working for defendants Smitray, Inc., S.D.P. Investments, Inc., Dinu Dahyabhai Patel, and Nick Dahya (collectively doing business as a Days Inn hotel, referred to here as the Smitray

---

[1] Drs. Gizzi and Hariharan and JFK, sometimes referred to collectively as the New Jersey defendants, are not parties to this appeal.

defendants).[2]  Thakar alleges that the Smitray defendants were contacted by Drs. Gizzi and Hariharan and given false information, which eventually led to their conspiring with the doctors to terminate his employment and interfere with his rights in a multitude of ways.  Defendant and respondent Robert Conti is an attorney retained by the Smitray defendants in relation to various legal actions initiated by Thakar arising out of his employment with Smitray.  However, Thakar alleges Conti also has connections with Drs. Gizzi and Hariharan and is part of a conspiracy to thwart Thakar's efforts to obtain legal assistance and employment.  Thakar further asserts that he began working in May 2010 as an insurance sales agent, and faced discrimination and unfair treatment there as well, including payment of unfair commissions and interference with his business relationships with clients and potential clients.

In his complaint, Thakar sought an injunction prohibiting all of the defendants from interfering with his search for legal representation and with his employment.  He also asserted causes of action for invasion of privacy, intentional interference with his exercise of legal rights, defamation, intentional interference with contract, breach of contract, malicious prosecution, fraud, false imprisonment, intentional infliction of pain and suffering, various forms of conspiracy, and interference with prospective economic advantage.  He prayed for injunctive relief, compensatory and punitive damages, and costs of suit.

Conti filed a demurrer, asserting numerous grounds upon which the complaint failed to state a cognizable cause of action.  Conti also filed a special motion to strike pursuant to Code of Civil Procedure section 425.16.  Thakar filed opposition to the demurrer and the special motion to strike.  Conti filed reply papers.

The matter was heard and argued on October 21, 2011.  The court sustained Conti's demurrer without leave to amend on the ground that the entire complaint was barred by Civil Code section 1714.10.  Accordingly, the court entered judgment in favor of Conti.

---

[2]      The Smitray defendants are not parties to this appeal.

3

This timely appeal followed.

## DISCUSSION

**I.     The Complaint**

Because this matter comes to us upon the sustaining of a demurrer without leave to amend, we set forth in some detail the allegations made in Thakar's complaint. "We independently review the trial court's ruling sustaining a demurrer without leave to amend (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 5) and 'must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.] . . . In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]' (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)" (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1470-1471.)

We reemphasize here that "[b]ecause a demurrer tests only the legal sufficiency of the pleading, *we accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove its factual allegations*. [Citation.]" (*Friends of Glendora v. City of Glendora* (2010) 182 Cal.App.4th 573, 576, italics added.)

In his introductory allegations applicable to all causes of action, Thakar alleged that he worked as a resident manager for defendant Smitray Inc., doing business as Days Inn Airport Center, from about March 2006 to April 2008. The Days Inn Airport Center was managed by Nick Dahya (Nick) and S.D.P. Investments, Inc. Dinu Dahyabhai Patel

4

(Dinu) is Nick's elder brother and dominant owner of Smitray Inc. and S.D.P. Investments, Inc.

Defendants Dinu, Nick, and their family members were contacted directly and/or indirectly by Gizzi and Hariharan, given false, derogatory information, and persuaded to conspire against Thakar. Thakar filed a charge with the Equal Employment Opportunity Commission (EEOC) when one of his subordinates told Thakar that he was asked by Dinu to provide grounds to terminate him. Thakar claims he suffered discrimination in retaliation for his ongoing legal actions and claims against JFK, including "work related hostilities, constant threat of termination, scarce resources for maintenance as well as front desk and daily interference with work using constant video cameras surveillance in the office and property." Thakar was paid as an exempt employee for working about 12 hours a day, six days a week.

In early 2008, soon after filing a formal complaint with the United States Department of Justice (USDOJ) against the defendants, Thakar was warned by his Chinese take-out restaurant that his food was being replaced in the parking lot, causing him to suffer with insomnia, dizziness, and anxiety after eating these meals. He therefore requested an unpaid vacation, which was initially approved by defendant Nick, but then he was fired two days later for taking a long vacation on short notice.

Thakar was unable to find another job and residence, and was constantly intimidated by the hotel staff. His car windshield was shot with air gun pellets. The sheriff's office served him with a restraining order that had been procured by defendants Nick and Dinu by making false, malicious statements. Thakar was told to pack up his belongings in two hours and when he was unable to do so, he was apprehended and taken to jail for half a day. Thakar returned to his residence to retrieve his belongings, but defendant Nick called the police again, and he was sent to county jail for 20 days. He pleaded no contest to stay out of jail and was convicted of a misdemeanor contempt of court charge.

Defendants Nick and Dinu conspired with Gizzi, Hariharan, and JFK to create a hostile work environment and then terminate Thakar in retaliation for filing the complaint

5

with USDOJ.  Defendants also conspired and managed to inflict a misdemeanor charge upon Thakar to reduce his credibility in his ongoing pursuit to regain his career as a physician, accomplishing in July 2008 what was attempted first in October 2003, a misdemeanor criminal record for Thakar aimed at reducing their liability for ruining Thakar's scholastic career as a neurologist.

Attorney Robert Conti, who had a prior connection and/or relationship with Gizzi, came to rescue Dinu and Nick as well as their corporate assets, Smitray and S.D.P., to assist them in opposing Thakar's complaint filed with the Department of Fair Employment and Housing (DFEH), the EEOC, and the Department of Labor.  "Conti positioned himself as the main link and go[-]between [between] Plaintiff's former superiors Gizzi and Harry and new recruits, Smitray Defendants.  Continuing where Gizzi and Harry had left off, Conti guided Nick and Dinu in to forging a second termination letter and written warnings purportedly given to Plaintiff during his employment and submitted them to EEOC and DFEH in defense."  Thakar's personnel file from the Smitray defendants contained only the agreements he signed initially, and contained no derogatory documents.  The Smitray defendants opposed Thakar's claim for unpaid overtime and in a hearing before the Labor Commissioner (represented by Conti) coached Thakar's subordinates into making malicious and false allegations, resulting in denial of his claim for overtime wages.  "Instead of providing professional advice and guidance as their Attorney, Conti is conspiring with Gizzi to perpetuate harms against [Thakar] by any means possible.  Instead of minimizing damages, suggesting mediation and professionally handling the affairs of Smitray Defendants, Conti engulfed the lat[t]er deeper in to conspiracy with each move aimed at causing harm to [Thakar] and reducing liability to Gizzi.  Smitray Defendants have actively participated with Conti by forging documents, making false statements and malicious prosecution of [Thakar].  In exchange, Conti is providing free legal assistance explaining why he continued representation of the Defendants despite changing his Law Firm 50 miles away.  Smitray Defendants solidified their participation in the conspiracy by persisting with Conti . . . ."

6

Thakar then began working as an insurance sales agent, but his new employers were drawn into the conspiracy to harm him, interfering with his ability to earn an income and with his customers and prospective customers. He was later terminated and denied earned commissions.

As to each cause of action, Thakar incorporated by reference all other paragraphs in the complaint and reasserted those allegations as if set forth in full as to each cause of action.

Thakar's first cause of action sought an injunction prohibiting defendants from interfering with Thakar's search for legal representation. Therein, he alleged that Gizzi, Hariharan, and JFK had used unlawful methods to interfere with Thakar's efforts to pursue legal recourse. He alleged he had contacted hundreds of attorneys and legal aid organizations, all of whom refused to represent him after defendants contacted them and discouraged, coerced, or intimidated them to drop Thakar's case. He sought an injunction to prevent all defendants from performing surveillance of him, or interfering with his search for representation or communicating with any attorney with whom he was in contact or who Thakar retained.

Thakar's second cause of action sought an injunction prohibiting all defendants from interfering with his employment and income. He alleged that JFK, Gizzi, and Hariharan interfered with his employment in order to destabilize him financially and escape their liability to him. Thakar claimed he faced hostilities, discrimination, retaliation, forced resignations, and terminations with every one of his employers ever since he filed legal action against JFK in 2003, resulting in his filing at least five EEOC charges against his former employers. He alleged that defendants had used unlawful methods including illegal surveillance to reduce his income from sales commissions by contacting his potential clients and clients. He sought an injunction prohibiting defendants from communicating with his current and future employers and coworkers,

7

performing illegal surveillance of him, or communicating with his existing and potential clients.[3]

In his third cause of action for invasion of privacy, Thakar alleged he was placed under continuous surveillance by the defendants so they could interfere with his employment and retaliate against him. "All defendants are culprits in invading [Thakar's] privacy by either providing actual moneys to fund the continuous surveillance, providing cause for such surveillance or using the information obtained by such unlawful methods towards harming [Thakar] to obstruct and thwart his legal pursuit."

In his fourth cause of action for intentional interference with the exercise of legal rights, Thakar alleged that since he was defrauded out of his medical license in July 1998 by Gizzi, Hariharan, and JFK, all of the harms committed against him were done to enable them to escape their liability and accountability to him. The other defendants (Smitray and Conti, among others) "were coerced, persuaded and/or intimidated in to participating in the ongoing conspiracy aimed at preventing [Thakar] from getting his day in the court." Similarly, in the fifteenth cause of action for "conspiracy to obstruct exercise of legal rights," Thakar alleged that the New Jersey defendants conspired with Thakar's legal counsel to sabotage his legal claims. Thereafter, those defendants caused Thakar to be "black listed" from obtaining legal representation. The "[r]emaining [d]efendants in this action participated by obliging Gizzi, Harry and JFK to cause stressful employments, wrongful termination and reducing [Thakar's] income any which way possible."

In his fifth cause of action for defamation, Thakar alleged that Gizzi, Hariharan, and JFK first defamed him by wrongfully firing him and "perpetuated derogatory propaganda against [him] over the past thirteen years to black list him in order to deprive [him] of legal representation." These defamatory statements and perversion of the truth

---

[3]    In a previous appeal, we affirmed the trial court's order denying Thakar's ex parte application for a preliminary injunction by which he sought the injunctive relief set forth in his first and second causes of action. (*Thakar v. Smitray, Inc.* (June 19, 2012, B234776) [nonpub. opn.].)

8

helped the New Jersey defendants to "spread their net by recruiting [the] remaining defendants." Conti "acted as go[-]between [between] the NJ defendants and Smitray defendants to submit false, manufactured statements against the Plaintiff in writing to obtain restraining order in lieu of eviction from the Inglewood Superior Court. Smitray [d]efendants and [C]onti also twisted the information in confidential past employment record of [Thakar] with another NJ employer and used it in their defense with EEOC. During the hearing for overtime wage complaint, Smitray [d]efendants and Conti coached [Thakar's] subordinates in to making false, derogatory statements against him."

In his sixth cause of action for intentional interference with contract, Thakar alleged he signed a contract to work as resident manager at Days Inn, and Gizzi, Hariharan, and JFK interfered with that contract by recruiting the Smitray defendants to create a hostile work environment. "Conti played an active role in providing legal expertise before and after breach of contract by acting as a go[-]between."

The seventh cause of action for breach of contract contains no allegations against Conti.

Thakar's eighth cause of action for malicious prosecution contains allegations regarding the New Jersey defendants that allegedly occurred in 2003, involving a failed attempt to falsely prosecute him. Conti's involvement in that matter was not alleged. Thakar alleged, however, that "[u]nder the guidance of Conti, Smitray [d]efendants picked up in 2008 where NJ Defendants had left off in 2004. Upon [Thakar's] formal complaint for criminal violations of civil rights with US Department of Justice, reducing [Thakar's] credibility by a criminal charge became prudent if not an urgent priority. Defendants Nick and Dinu made malicious and ridiculous false statement to obtain a restraining order. Plaintiff was prosecuted, jailed for twenty days and convicted of a misdemeanor in this conspired false prosecution to accomplish what was first attempted four years ago, a criminal charge on [Thakar's] record."

In his ninth cause of action for fraud, Thakar alleged that Gizzi, Hariharan, and JFK used Conti to perpetrate the forgery of documents submitted in defense of the Smitray defendants in proceedings before the EEOC. Conti then joined with the New

9

Jersey defendants and Smitray to convince a Dr. Shah to forge a letter for use in other court proceedings.

In his tenth cause of action for false imprisonment, Thakar alleged that Conti, along with the New Jersey defendants, caused Thakar to be repeatedly drugged in order to trap him in a compromising situation and inflict criminal charges on him. His employment was then terminated by the Smitray defendants, and he was falsely prosecuted and incarcerated in county jail for 20 days.[4]

The eleventh cause of action for intentional infliction of pain and suffering alleged that all of the defendants deliberately and maliciously caused him harm, violated his civil rights, deprived him of a successful medical career, and forced him into poverty and homelessness. Similarly, the twelfth cause of action for "conspiracy to inflict pain and suffering" briefly summarizes the wrongs done by the defendants against Thakar.

In his thirteenth cause of action for intentional interference with prospective economic advantage, Thakar alleged that the defendants' intentional wrongdoing, aimed at escaping liability for ruining his medical career and blocking his attempts to salvage his career by exercising his legal rights, interfered with his ability to earn the income a neurologist could expect to receive. "Additionally, conspired cover up deprived [Thakar] of[] any compensatory, punitive or other damages for destroying his MD career." Thakar's fourteenth cause of action for "conspiracy to interfere with prospective economic advantage" essentially repeated the same allegations.

## II.     Conti's Demurrer Was Timely

Thakar asserts Conti failed to timely file his demurrer. He is incorrect. Thakar served the summons and complaint on Conti by substituted service at his place of business on June 3, 2011, followed by mailing the summons and complaint pursuant to

---

[4]     These allegations apparently refer to the introductory allegations that the Smitray defendants obtained a restraining order against Thakar, forcing him to leave the Days Inn where he had been residing and working as resident manager.

10

Code of Civil Procedure section 415.20 on June 8, 2011.  Conti filed his demurrer on July 18, 2011.

Code of Civil Procedure section 415.20 provides in relevant part as follows: "(b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served . . . , a summons may be served by leaving a copy of the summons and complaint at the person's . . . usual place of business . . . in the presence of . . . a person apparently in charge of his or her . . . place of business . . . , and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.  *Service of a summons in this manner is deemed complete on the 10th day after the **mailing**.*"  (Italics and bold emphasis added.)  Thus, service was complete on June 18, 2011, 10 days after the summons and complaint were mailed.  The demurrer, filed 30 days later on July 18, 2011, was therefore timely.

### III.    Conspiracy Claims Against Attorneys

The trial court sustained Conti's demurrer without leave to amend solely on the basis that because Thakar's allegations involve charges of civil conspiracy against Conti, an attorney, Thakar was required to first seek an order from the court pursuant to Civil Code section 1714.10 permitting him to file his complaint.[5]  Section 1714.10, subdivision (a) states:  "No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.  The court may allow the filing of a pleading claiming liability based upon such a civil conspiracy following the filing of a verified petition therefor

---

[5]    All further undesignated statutory references are to the Civil Code.

accompanied by the proposed pleading and supporting affidavits stating the facts upon which the liability is based. The court shall order service of the petition upon the party against whom the action is proposed to be filed and permit that party to submit opposing affidavits prior to making its determination . . . ."

However, section 1714.10, subdivision (a) does not apply to a conspiracy claim against an attorney if "(1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (§ 1714.10, subd. (c).) This appeal involves only the first exception: whether Conti owed an "independent legal duty" to Thakar.[6] "A conspiracy claim against an attorney is . . . proper if the attorney who conspires with a client to injure another violates his or her *own* duty to the plaintiff." (*Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 709-710.)

"Section 1714.10 was intended to weed out the harassing claim of conspiracy that is so lacking in reasonable foundation as to verge on the frivolous." (*Evans v. Pillsbury, Madison & Sutro* (1998) 65 Cal.App.4th 599, 604; accord, *Central Concrete Supply Co., Inc. v. Bursak* (2010) 182 Cal.App.4th 1092, 1098-1099.) Unfortunately, as the court observed recently in *Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136 (*Rickley*): "'The net effect of the agent's immunity rule as articulated in *Doctors' Co.* [*v. Superior Court* (1989)] 49 Cal.3d 39,[7] and the statutory exceptions to the section 1714.10 procedural requirements now contained in subdivision (c) *is to render that section*

---

[6]     Section 1714.10, subdivision (c)(2) does not apply because although the complaint contains allegations that Conti's acts went "beyond the performance of a professional duty" to serve the Smitray defendants, there are no allegations that Conti engaged in the conspiracy in furtherance of his own financial gain.

[7]     "A cause of action for civil conspiracy may not arise, however, if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was *acting only as the agent or employee of the party who did have that duty*." (*Doctors' Co. v. Superior Court*, *supra*, 49 Cal.3d at p. 44, italics added.)

12

*practically meaningless.* If the plaintiff seeks to assert a conspiracy claim against an attorney based on the violation of a duty owed by the client, but not the attorney, and the attorney was acting within the scope of his or her professional responsibilities, the claim has no merit. The petition under section 1714.10 will be denied; but, in the absence of the statute, a demurrer would properly be sustained without leave to amend. Section 1714.10, at best, provides the attorney with only an additional procedural safeguard against meritless claims. If the plaintiff seeks to plead a conspiracy claim against an attorney based on fraud or *virtually any other common law tort theory*, the claim falls within section 1714.10, subdivision (c)(1); the procedural requirements of section 1714.10, subdivision (a), do not apply (that is, the plaintiff need not demonstrate a probability of prevailing on the merits); and the statute serves no screening function whatsoever.' (*Favila v. Katten Muchin Rosenman LLP* [(2010)] 188 Cal.App.4th [189,] 208-210, citations & fns. omitted.) [¶] Put another way, 'the effect of the [1991 amendment to section 1714.10] is anomalous. Since[, by virtue of the addition of subdivision (c),] the statute now removes from its scope the two circumstances in which a valid attorney-client conspiracy claim may be asserted, its gatekeeping function applies only to attorney-client conspiracy claims that are not viable as a matter of law in any event. . . . Thus, a plaintiff who can plead a viable claim for conspiracy against an attorney need not follow the petition procedure outlined in the statute as such a claim necessarily falls within the stated exceptions to its application.' (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 818, citation omitted; accord, *Panoutsopoulos v. Chambliss* (2007) 157 Cal.App.4th 297, 304-305; *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 390-396.)" (*Rickley*, *supra*, 212 Cal.App.4th at pp. 1150-1151, italics added.)

We turn then to consideration of whether the complaint contains allegations—even if highly improbable ones—of violation of any legal duties independently owed by Conti to Thakar. We find that it does. The gravamen of the complaint, as it relates to Conti, is that Conti conspired with the New Jersey defendants and others to thwart Thakar's efforts to obtain justice against the New Jersey defendants by obstructing his ability to earn an

13

income by turning his employers against him, damaging his credibility by deceitfully causing him to have a criminal record, causing him to expend time and resources on filing claims against his employers, and preventing his retention of legal counsel. Conti is alleged to have done so by, among other things, participating in conducting illegal surveillance of Thakar, and by defaming Thakar to his employers, clients, potential clients, and potential legal representatives. Conti also allegedly advised the Smitray defendants to file perjured documents in various legal proceedings, convinced Thakar's coworkers to lie about Thakar in legal proceedings, and gave unreasonable legal advice to the Smitray defendants regarding how to handle legal actions involving Thakar for the sole purpose of harassing him.

In order to come under the exception set forth in section 1714.10, subdivision (c), Thakar simply had to allege a violation by Conti of a duty he independently owed to Thakar. The fact he is an attorney and is alleged to have conspired with the other defendants to harm Thakar is meaningful for purposes of finding section 1714.10 applicable only if Thakar's allegations did not state a basis for liability against Conti based on his violation of an independent duty. Conspiracy is not an independent cause of action but rather a doctrine imposing liability for a tort upon those involved in its commission. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.) The major import of a conspiracy allegation is that it renders each participant responsible as a joint tortfeasor for all damages ensuing from the wrong, even if he or she did not act directly and regardless of the degree of activity. (*Ibid.*) However, "tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." (*Id.* at p. 511.) "Section 1714.10, subdivision (c) reflects these basic concepts by not applying the statute's procedural hurdle to situations where the attorney has a duty to the plaintiff, or to situations where the attorney acts not merely as an agent but as an individual in furtherance of the attorney's financial gain. In so doing, section 1714.10 exempts viable conspiracy actions against an attorney and his or her client from its procedural hurdle." (*Pavicich v.*

*Santucci*, *supra*, 85 Cal.App.4th at p. 396.) "In sum, given the rules of the law of conspiracy, the wording of section 1714.10, and its legislative history, it appears that there are no *viable* conspiracy actions to which section 1714.10's pleading hurdle might apply." (*Ibid.*, italics added.)

Thakar's complaint alleged that Conti violated independent legal duties he owed to Thakar: primarily, the duty not to invade his privacy by conducting unlawful surveillance of him, and the duty not to defame him to others in order to interfere with his livelihood, his retention of legal counsel, his credibility, and his peace of mind. Such allegations, however far-fetched, are sufficient to exempt the complaint from the reach of section 1714.10 on demurrer, primarily because the efficacy of section 1714.10 is essentially illusory. Thus, we conclude it was error for the trial court to sustain Conti's demurrer without leave to amend and enter judgment in favor of Conti. While some of the alleged conduct occurred within the context of Conti's representation of the Smitray defendants (and therefore may have been absolutely privileged, as we will briefly discuss), much of it did not.[8] Rather, much of the conduct allegedly occurred separate and apart from Conti's representation of the Smitray defendants, and was motivated not by Conti's desire to zealously represent the Smitray defendants, but instead by his purported desire to thwart Thakar from obtaining justice against the New Jersey defendants.

## IV.    The Litigation Privilege and the Special Motion to Strike

Conti contends that in the alternative he was entitled to have his demurrer sustained without leave to amend on the ground that his conduct was subject to the absolute litigation privilege of section 47, subdivision (b). While we agree that some of the conduct alleged in the complaint would be subject to the litigation privilege, much of it would not and therefore the complaint was not subject to general demurrer on that basis.

---

[8]     For this same reason, the "agent's immunity rule," which is the foundation for section 1714.10, also does not bar the present action. (See fn. 7, *ante*.)

"'The litigation privilege is codified in Civil Code section 47 . . . : "[A] privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding . . . ." (§ 47, subd. (b).) . . . . [¶] "Although originally enacted with reference to defamation . . . , the privilege is now held applicable to any communication, whether or not it amounts to a publication . . . , and all torts except malicious prosecution. . . . [I]t applies to any publication required or permitted by law in the course of a judicial proceeding *to achieve the objects of the litigation*, even though the publication is made outside the courtroom and no function of the court or its officers is involved. . . . [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) *to achieve the objects of the litigation*; and (4) that have some connection or logical relation to the action. . . ." . . . Thus, "communications with 'some relation' to judicial proceedings" are "absolutely immune from tort liability" by the litigation privilege . . . . It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. . . .'" (*Rickley*, *supra*, 212 Cal.App.4th at p. 1160, quoting *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, at pp. 1057-1058 (*Rusheen*).) The litigation privilege is absolute and applies regardless of malice. Furthermore, where the gravamen of the complaint is a privileged communication, the litigation privilege extends to necessarily related noncommunicative conduct. (*Rusheen*, *supra*, 37 Cal.4th at pp. 1062-1063.)

The communications and necessarily related noncommunicative conduct allegedly engaged in by Conti were not all or even primarily attempts "'to achieve the objects of the litigation'" for which Conti was engaged by the Smitray defendants. (See *Rusheen*, *supra*, 37 Cal.4th at p. 1057.) A party's legitimate objectives in the litigation are limited to the remedies that can be awarded by courts. Thus, the objects of the litigation for a defendant are to resist a determination of liability and whatever assessment of damages, penalty, or other order the plaintiff seeks. (*Rickley*, *supra*, 212 Cal.App.4th at p. 1163, citing *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1147-1148.) The complaint alleges that Conti engaged in communications and related conduct in the course of

16

various legal proceedings in which he represented the Smitray defendants (which would be subject to the litigation privilege),[9] but the primary wrong allegedly done by him was to seek to thwart Thakar from obtaining justice against the New Jersey defendants. He did not represent those defendants and the conduct primarily consisted not of acts done in furtherance of representing the Smitray defendants, but of acts engaged in to convince third parties to jail Thakar, mistreat him in his employment and terminate him, perjure themselves in documents filed in other proceedings (e.g., Dr. Shah), and refuse to buy

---

[9]     Allegations that describe conduct protected by the litigation privilege would include the following (an extensive but not exhaustive list): Thakar alleged that after he filed a complaint with the USDOJ against the defendants his food was poisoned, then he was terminated for taking vacation time. The Smitray defendants filed a restraining order against him and had him jailed when he violated it. Conti, who had a prior connection and/or relationship with Gizzi, assisted the Smitray defendants in opposing Thakar's complaints filed with DFEH, EEOC, and the Department of Labor. Conti purportedly convinced the Smitray defendants to forge a termination letter and written warnings supposedly given to Thakar during his employment and submitted them to EEOC and DFEH. The Smitray defendants opposed Thakar's claim for unpaid overtime and in a hearing before the Labor Commissioner (represented by Conti) coached Thakar's subordinates into making malicious and false allegations, resulting in denial of his claim for overtime wages. Thakar alleges Conti failed to suggest mediation and handled the legal affairs of the Smitray defendants in an unprofessional manner "with each move aimed at causing harm to [Thakar] and reducing liability to Gizzi. [The] Smitray Defendants have actively participated with Conti by forging documents, making false statements and malicious prosecution of [Thakar]." In his fifth cause of action for defamation, Thakar alleged that Conti "acted as go[-]between [between] the NJ defendants and Smitray defendants to submit false, manufactured statements against the Plaintiff in writing to obtain [a] restraining order in lieu of eviction from the Inglewood Superior Court. Smitray [d]efendants and [C]onti also twisted the information in confidential past employment record of [Thakar] with another NJ employer and used it in their defense with EEOC. During the hearing for overtime wage complaint, Smitray [d]efendants and Conti coached [Thakar's] subordinates in to making false, derogatory statements against him." In his sixth cause of action for intentional interference with contract, Thakar alleged he signed a contract to work at Days Inn and Conti recruited the Smitray defendants to create a hostile work environment, "play[ing] an active role in providing legal expertise before and after breach of contract by acting as a go[-]between." In his ninth cause of action for fraud, Thakar alleged the New Jersey defendants "used Conti to perpetrate the forgery of documents submitted in defense of the Smitray defendants in proceedings before the EEOC," and Conti participated in convincing a Dr. Shah to forge a letter for use in other (unidentified) court proceedings.

17

insurance from him.  Such communications were not made ""in the course of a judicial proceeding *to achieve the objects of the litigation*.""" (*Rickley*, *supra*, 212 Cal.App.4th at p. 1160.)  Thus, the litigation privilege did not provide immunity from tort liability to Conti to such an extent that the entire complaint would be subject to demurrer.

Similarly, Conti's special motion to strike (the "anti-SLAPP motion") brought pursuant to Code of Civil Procedure section 425.16 did not provide a basis upon which to strike the complaint, as each of Thakar's causes of action was *not* premised on the purported communications and conduct of Conti in representing his clients, the Smitray defendants.  As Conti correctly notes, Code of Civil Procedure section 425.16, subdivision (e)(1) and (2) are coextensive with the litigation privilege of Civil Code section 47, subdivision (b). (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125.)


## V.	The Complaint's Failure to State Essential Elements Necessary to State a Cause of Action

"A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.  (See *E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504 and fn. 2; *Weinstock v. Eissler* (1964) 224 Cal.App.2d 212, 225.)  A general demurrer searches the complaint for all defects going to the existence of a cause of action and places at issue the legal merits of the action on assumed facts.  [Citations.]" (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)  Here, Conti brought a general demurrer in addition to the special demurrer regarding section 1714.10 upon which the trial court ruled.  A reviewing court reviews the judgment rather than the reasons for the judgment and must affirm the judgment if any of the grounds stated in the demurrer is well taken. (*E. L. White, Inc. v. City of Huntington Beach*, *supra*, 21 Cal.3d at p. 504 and fn. 2; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)  In any event, the rule that on appeal a litigant may not argue theories for the first time does not apply to pure questions of law. (*Carman*, *supra*, 31 Cal.3d at p. 324.)

18

Although Thakar asserts the trial court should have given him leave to amend his complaint, he bore the burden of proposing amendments and proving that such amendments would cure the defects in his complaint. (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th 1074, 1081; *Satten v. Webb* (2002) 99 Cal.App.4th 365, 374.) He has not done so, either on appeal or in the trial court, and we therefore reject his assertion that he should be permitted to amend his complaint to cure the defects which we now describe.

### A.      *Causes of Action Subject to General Demurrer*

Conti brought a general demurrer as to various causes of action based on their failure to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) We conclude that his arguments are well taken as to certain causes of action.

#### 1.      Injunction

The first and second "causes of action" seek the equitable remedy of a permanent injunction against Conti prohibiting him from interfering with (1) Thakar's search for legal representation, and (2) his employment and income. However, as Conti points out, in order to plead a cause of action for injunctive relief, a plaintiff must plead the grounds upon which equitable relief is justified by showing that the remedy at law is inadequate. He has not alleged that the purportedly wrongful acts constitute an actual or threatened injury to his property or personal rights that cannot be compensated by an ordinary damage award. (See *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352.) Accordingly, those claims were subject to general demurrer. Because Thakar has not demonstrated he could amend the complaint to sufficiently state a basis for injunctive relief, we conclude demurrer was properly sustained without leave to amend as to those causes of action.

## 2. "Intentional Interference With Exercise of Legal Rights" and "Conspiracy to Obstruct Exercise of Legal Rights"

The fourth and fifteenth causes of action, for "intentional interference with exercise of legal rights" and "conspiracy to obstruct exercise of legal rights" do not state recognized and cognizable causes of action. They are simply surplusage because the primary rights alleged to have been violated are addressed in other viable causes of action, discussed in section B below.

## 3. Breach of Contract

The seventh cause of action for breach of contract does not relate to Conti. He is not mentioned in that cause of action, and Thakar does not allege that Conti was a party to any contract which was breached.

## 4. Malicious Prosecution

The eighth cause of action for malicious prosecution alleges that under Conti's guidance the Smitray defendants made malicious and false statements in order to obtain a restraining order against Thakar, and he was prosecuted for violating that order and jailed. Thakar fails to allege an essential element of a cause of action for malicious prosecution: favorable termination of the proceeding. Instead he alleges that he was prosecuted and jailed. As Conti points out, "If the accused were actually convicted, the presumption of his guilt or of probable cause for the charge would be so strong as to render wholly improper any action against the instigator of the charge." (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150.) The eighth cause of action was fatally defective and was therefore subject to demurrer.

## 5. Fraud

Similarly, the ninth cause of action for fraud necessarily fails because Thakar did not allege any reliance on his part on any falsehoods or misrepresentations made by Conti or the other defendants. (See *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088-1089.)

20

Indeed, it is implicit from Thakar's allegations that he knew at all times that statements made in documents submitted in defense of the Smitray defendants and in other proceedings were false and that he did not rely on those statements to his detriment. The cause of action for fraud was therefore subject to dismissal.

### 6. False Imprisonment

Thakar alleged in his tenth cause of action for false imprisonment that Conti "manufactured statements against [Thakar] in writing to obtain [a] restraining order in lieu of eviction from the Inglewood Superior Court," and that he was imprisoned for violating the restraining order that was obtained based on the false statements Conti directed the Smitray defendants to make. Such communications by Conti, even if motivated by malice, are subject to the absolute litigation privilege because they were "'(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3*) to achieve the objects of the litigation*; and (4) that have some connection or logical relation to the action. . . .'" (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.) Thus, these allegations cannot form the factual basis for a cause of action for false imprisonment against Conti. Thakar has not stated how he would propose to amend the complaint to state a cause of action for false imprisonment and therefore we assume he could not do so. The demurrer to this cause of action is properly sustainable without leave to amend.

### B. *The Remaining Viable Causes of Action*
### 1. Invasion of Privacy and Defamation

Conti does not contend on appeal that Thakar's third cause of action for invasion of privacy and his fifth cause of action for defamation were insufficient, and we find that the allegations were adequate to survive demurrer.

## 2. Intentional Interference With Contract and With Prospective Economic Advantage

Conti argues on appeal that the sixth cause of action for intentional interference with contract, and the related thirteenth cause of action for intentional interference with prospective economic advantage and fourteenth cause of action for conspiracy to interfere with prospective economic advantage are barred by the manager's privilege. We disagree.

Conti correctly states that the manager's privilege protects an attorney from a claim of inducing the breach of a contract or interference with prospective economic advantage when providing advice in the course of representing a client. (Citing *Los Angeles Airways, Inc. v. Davis* (9th Cir. 1982) 687 F.2d 321; *Halvorsen v. Aramark Uniform Services, Inc.* (1998) 65 Cal.App.4th 1383.) However, it is incorrect to state that Thakar alleged only that Conti interfered with Thakar's interests by means of his legal representation of the Smitray defendants. Rather, Thakar alleged that Conti acted outside the scope of his representation of the Smitray defendants by contacting Thakar's clients and potential clients, as well as his other employers, in order to disrupt those relationships by defaming Thakar. The manager's privilege does not bar such claims.

## 3. Intentional Infliction of Pain and Suffering

Finally, Conti argues on appeal that the eleventh and twelfth causes of action for intentional infliction of pain and suffering and conspiracy to inflict pain and suffering were not viable. We disagree.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe and extreme emotional suffering; and (4) actual and proximate causation of the emotional distress. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) Conti contends that Thakar did not allege outrageous conduct on Conti's part, or assert any unprivileged conduct as a basis for the cause of action. Taking into account that Thakar incorporated by reference

22

all other paragraphs in the complaint and reasserted those allegations as if set forth in full as to each cause of action, we must conclude that he adequately alleged the elements of intentional infliction of emotional distress. He asserted that Conti conducted surveillance of him and defamed him to existing and potential clients and to his employers in order to thwart his ability to seek justice against the New Jersey defendants and in order to cause him to suffer emotional harm, and that he did suffer such harm. As we discussed above, such conduct was not limited to Conti's conduct in representing the Smitray defendants, and such conduct was not privileged. These allegations were sufficient to survive demurrer.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion. The parties are to bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


SUZUKAWA, J.

We concur:


WILLHITE, Acting P. J.


MANELLA, J.

23